UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MELISSA GENERAL,

             Plaintiff,

    vs.

CENTER FOR DISABILITY RIGHTS,

             Defendant.
_____

**NOTICE OF MOTION**

**Civ. No. 07- CV- 6159**

PLEASE TAKE NOTICE that upon the annexed Rule 56.1 Statement, the Affirmation of Robert G. McCarthy, dated May 18, 2010, with attached exhibits, and the Memorandum of Law, dated May 18, 2010, Defendant by its attorneys CHAMBERLAIN, D'AMANDA, OPPENHEIMER & GREENFIELD LLP, will move before the Honorable Michael A. Telesca, United States District Court for the Western District of New York, at the U.S. Courthouse, Courtroom, 100 State Street, Rochester, New York 14614, on July 8, 2010, at 9 a.m., or as soon thereafter as the case may be heard, for an Order pursuant to Rule 16(b)(4) of the Federal Rules of Civil Procedure, extending the dispositive motion deadline, and further for an order Fed. R. Civ. P. 56, granting Defendant summary judgment and dismissing the Amended Complaint.

**PLEASE TAKE FURTHER NOTICE** that opposition and reply papers must be served in accordance with Local Rule 56.1(d).

Dated: May 18, 2010
      Rochester, New York

                          Respectfully submitted,
                          By: /s/ Robert G. McCarthy
                            Robert G. McCarthy
                          Chamberlain D'Amanda
                          Oppenheimer & Greenfield
                          Two State St. Ste. 1600
                          Rochester, NY 14614
                          (585) 232-3730

TO:    CHRISTINA A. AGOLA., ESQ., PLLC
        Attorney for Plaintiff
        2100 First Federal Plaza
        28 East Main Street
        Rochester, NY 14614

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MELISSA GENERAL,                                   CIV. No. 07- CV- 6159T

        Plaintiff,

                             AFFIRMATION

    vs.

CENTER FOR DISABILITY RIGHTS,

        Defendant.

---

STATE OF NEW YORK)
COUNTY OF MONROE) ss:

**ROBERT G. McCARTHY**, affirms under the penalties of perjury:

    1.    I am an attorney duly licensed to practice law in the State of New York. I am counsel to Chamberlain, D'Amanda, Oppenheimer & Greenfield, attorneys for Defendant. I respectfully submit this Affirmation in support of Defendant's Motion for Summary Judgment.

    2.    A copy of the Complaint is annexed hereto as **Exhibit 1**.

    3.    A copy of the Amended Answer with Affirmative Defenses filed May 15, 2007 is attached as **Exhibit 2**.

    4.    On or about October 22, 2009, Magistrate Judge Jonathan W. Feldman granted Defendant's motion to extend discovery sixty (60) days and ordered that any requests for an extension of the dispositive motion deadline should be made before Judge Michael A. Telesca. A copy of Judge Feldman's order is attached as **Exhibit 3**.

    5.    The parties were unable to schedule Plaintiff's deposition within sixty (60) days due to the fact she resides in Turkey. The parties jointly requested a sixty (60) day

extension, which Judge Feldman granted on December 17, 2009.  A copy of Judge

Feldman's order is attached as **Exhibit 4**.

6.      On February 17, 2010, I took the deposition of Plaintiff Melissa General.

The relevant pages of Plaintiff's deposition, those referred to in the Statement of

Undisputed Facts and the Memorandum of Law in support of Defendant's Motion for

Summary Judgment, are pages 5, 14, 39-55, 64, 69-71, and are attached as **Exhibit 5**.

7.      This affirmation is submitted in support of Defendant's Motion for

Summary Judgment.

Dated:  May 18, 2010

s/Robert G. McCarthy<br>Robert G. McCarthy, Esq.<br>Attorney for Defendants<br>CHAMBERLAIN, D'AMANDA<br>OPPENHEIMER & GREENFIELD, LLP<br>Two State Street, Suite 1600<br>Rochester, NY 14614<br>Tel.:  585-232-3730<br>rgm@cdlawyers.com.

EXHIBIT 1

AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

_____ District of _____

Melissa General

    V.

**SUMMONS IN A CIVIL ACTION**

Center For Disability Rights

CASE NUMBER:   07-CV-6159 $T$ $(Fe)$

TO: (Name and address of Defendant)

Center For Disability Rights
412 State Street
Rochester, NY 14621

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Melissa General
65 Rustic Street
Rochester, NY 14609

an answer to the complaint which is served on you with this summons, within _____ 20 _____ days after service
of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you
for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the
Clerk of this Court within a reasonable period of time after service.

CLERK

BY

DATE

DEPUTY CLERK

FILED                    -PS-

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

2007 JUN 26  PM 2: 49

U.S. DISTRICT COURT
W.D.N.Y. - BUFFALO

MELISSA GENERAL,

        Plaintiff,

        -v-

CENTER FOR DISABILITY RIGHTS,

        Defendant.

07-CV-6159T(Fe)

MEMORANDUM and ORDER

Plaintiff has requested permission to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(a) and has met the statutory requirements. Accordingly, plaintiff's request to proceed as a poor person is hereby granted. In addition, plaintiff's complaint has been reviewed by the Court with respect to the 28 U.S.C. § 1915(e)(2) criteria.

The Clerk of the Court is directed to file plaintiff's papers, and to cause the United States Marshal to serve copies of the Summons, Complaint, and this Order upon the named defendant without plaintiff's payment therefor, unpaid fees to be recoverable if this action terminates by monetary award in plaintiff's favor.

SO ORDERED.

DATED:    Buffalo, New York
        June 22 , 2007

        John T. Elf
        JOHN T. ELFVIN
        UNITED STATES DISTRICT JUDGE

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

Revised 05/01 WDNY

*Melissa General*

_____

**Jury Trial Demanded: Yes** ☒ **No** ____

Name(s) of Plaintiff or Plaintiffs

-vs-

*Center for Disability Rights*

**DISCRIMINATION COMPLAINT**

_____ -CV- _____

Name of Defendant or Defendants

07CV 6159 T(Fe)

This Action is brought for discrimination in employment pursuant to *(check only those that apply)*:

_____ Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub.L.No. 102-166) (race, color, gender, religion, national origin).

> **NOTE:** In order to bring suit in federal district court under Title VII, you **must first obtain a right to sue letter** from the Equal Employment Opportunity Commission.

_____ Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621-634 (amended in 1984, 1990, and by the Age Discrimination in Employment Amendments of 1986, Pub.L.No. 99-592, the Civil Rights Act of 1991, Pub.L.No. 102-166).

> **NOTE:** In order to bring suit in federal district court under the Age Discrimination in Employment Act, you **must first file charges** with the Equal Employment Opportunity Commission.

_____ Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112-12117 (amended by the Civil Rights Act of 1991, Pub.L.No. 102-166).

> **NOTE:** In order to bring suit in federal district court under the Americans with Disabilities Act, you **must first obtain a right to sue letter** from the Equal Employment Opportunity Commission.

**JURISDICTION** is specifically conferred upon this United States District Court by the aforementioned statutes, as well as 28 U.S.C. §§ 1331, 1343. Jurisdiction may also be appropriate under 42 U.S.C. §§ 1981, 1983 and 1985(3), as amended by the Civil Rights Act of 1991, Pub.L.No. 102-166, and any related claims under New York law.

1.   My address is: *105 Rustic St*
     *Rochester NY 14609*

     My telephone number is: *585 - 266 - 0156*

2. The name of the employer(s), labor organization, employment agency, apprenticeship committee, state or local government agency who I believe discriminated against me is/are as follows:

Name: _Center for Disability Rights_
Number of employees: _____
Address: _497 State Street_
_Roch, NY 14621_

3. (If different than the above), the name and/or the address of the defendant with whom I sought employment, was employed by, received my paycheck from or whom I believed also controlled the terms and conditions under which I were paid or worked. (For example, you worked for a subsidiary of a larger company and that larger company set personnel policies and issued you your paycheck).

Name: _____
Address: _____
_____
_____
_____

4. I was first employed by the defendant on (date): _5 - 1 - 01_

5. As nearly as possible, the date when the first alleged discriminatory act occurred is: _9 26 04_

6. As nearly as possible, the date(s) when subsequent acts of discrimination occurred (if any did): _____
_____
_____

7. I believe that the defendant(s)

a. __✓__   Are still committing these acts against me.
b. _____   Are not still committing these acts against me.
(Complete this next item **only** if you checked "b" above)   The last discriminatory act against me occurred on (date) _____

8. (Complete this section **only** if you filed a complaint with the New York State Division of Human Rights)

The date when I filed a complaint with the New York State Division of Human Rights is _11 - 05 - 04_
(estimate the date, if necessary)

I filed that complaint in (identify the city and state): _NYS_

2

The Complaint Number was: _165_ _2005_ _00029_

9.   The New York State Human Rights Commission did _____ /did not _____
     issue a decision. (**NOTE**: If it **did** issue a decision, you **must attach** one copy of the
     decision to **each** copy of the complaint; failure to do so will delay the initiation of your case.)

10.  The date (if necessary, estimate the date as accurately as possible) I filed charges with the
     Equal Employment Opportunity Commission (EEOC) regarding defendant's alleged
     discriminatory conduct is: _____

11.  The Equal Employment Opportunity Commission did _____ /did not _____
     issue a decision. (**NOTE**: If it **did** issue a decision, you **must attach** one copy of the
     decision to **each** copy of the complaint; failure to do so will delay the initiation of your case.)

12.  The Equal Employment Opportunity Commission issued the attached Notice of Right to Sue
     letter which I received on: _____. (**NOTE**: If it **did**
     issue a Right to Sue letter, you **must attach** one copy of the decision to **each** copy of the
     complaint; failure to do so will delay the initiation of your case.)

13.  I am complaining in this action of the following types of actions by the defendants:

     a. _____   Failure to provide me with reasonable accommodations to the application
                    process

     b. _____   Failure to employ me

     c. _____   Termination of my employment

     d. _____   Failure to promote me

     e. _____   Failure to provide me with reasonable accommodations so I can perform the
                    essential functions of my job

     f. _____   Harassment on the basis of my sex

     g. _____   Harassment on the basis of unequal terms and conditions of my employment

     h. _____   Retaliation because I complained about discrimination or harassment directed
                    toward me

     i. _____   Retaliation because I complained about discrimination or harassment directed
                    toward others

     j. _____   Other actions (please describe) _____
                    _____
                    _____

3

14. Defendant's conduct is discriminatory with respect to which of the following *(check all that apply)*:

    a. _____ Race                       f. _____ Sexual Harassment

    b. _____ Color                      g. _____ Age

    c. _____ Sex                        _____ Date of birth

    d. _____ Religion                h. _____ Disability

                                  Are you incorrectly perceived as being disabled by your employer?

    e. _____ National Origin            _____ yes ___ no

15. I believe that I was _____ /was not _____ **intentionally** discriminated against by the defendant(s).

16. I believe that the defendant(s) is/are _____ is not/are not _____ still committing these acts against me. (If you answer is that the acts are not still being committed, state when: _____ and why the defendant(s) stopped committing these acts against you: _____ _____

17. A copy of the charge to the Equal Employment Opportunity Commission is attached to this complaint and is submitted as a brief statement of the facts of my claim. **(NOTE: You must** attach a copy of the **original complaint** you filed with the Equal Employment Opportunity Commission and a copy of the **Equal Employment Opportunity Commission affidavit to** this complaint; failure to do so will delay initiation of your case.)

18. The Equal Employment Opportunity Commission *(check one):*
    _____ **has not** issued a Right to sue letter
    _____ **has** issued a Right to sue letter, which I received on _____Dec 28, 2007_____

19. State here as briefly as possible the *facts* of your case. Describe how each defendant is involved, including *dates* and *places*. Do not give any legal arguments or cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. *(Use as much space as you need. Attach extra sheets if necessary.)*

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

**FOR LITIGANTS ALLEGING <u>AGE DISCRIMINATION</u>**

20.  Since filing my charge of age discrimination with the Equal Employment Opportunity
     Commission regarding defendant's alleged discriminatory conduct
     _____ 60 days or more have elapsed    _____ less than 60 days have elapsed

**FOR LITIGANTS ALLEGING AN AMERICANS WITH DISABILITIES ACT CLAIM**

21.  I first disclosed my disability to my employer (or my employer first became aware of my
     disability on _____

22.  The date on which I first asked my employer for reasonable accommodation of my disability
     is _____

23.  The reasonable accommodations for my disability (if any) that my employer provided to me
     are: _____
     _____
     _____

24.  The reasonable accommodation provided to me by my employer were _____/were not
     _____ effective.

**WHEREFORE**, I respectfully request this Court to grant me such relief as may be appropriate,
including injunctive orders, damages, costs and attorney's fees.

Dated: _____    _____
                                              Plaintiff's Signature

5

EEOC Form 161-A (3/98)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE
### (CONCILIATION FAILURE)

| To: | Melissa General<br>307 Avenue A<br>Rochester, NY 14621 | From: | Buffalo Local Office - 525<br>6 Fountain Plaza<br>Suite 350<br>Buffalo, NY 14202 |
|---|---|---|---|

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 165-2005-00029 | John E. Thompson,<br>Investigator | (716) 551-4441 |

### TO THE PERSON AGGRIEVED:

This notice concludes the EEOC's processing of the above-numbered charge.  The EEOC found reasonable cause to believe that violations of the statute(s) occurred with respect to some or all of the matters alleged in the charge but could not obtain a settlement with the Respondent that would provide relief for you.  In addition, the EEOC has decided that it will not bring suit against the Respondent at this time based on this charge and will close its file in this case.  This does not mean that the EEOC is certifying that the Respondent is in compliance with the law, or that the EEOC will not sue the Respondent later or intervene later in your lawsuit if you decide to sue on your own behalf.

### - NOTICE OF SUIT RIGHTS -
### (See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you.  You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt **of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a state claim may be different.

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

*[signature]*

**Elizabeth Cadle,**
**Director**

DEC 2 1 2006

(Date Mailed)

cc: **Mary Willoughby**
**Human Resource Manager**
**CENTER FOR DISABILITY RIGHTS**
**412 State Street**
**Rochester, NY 14621**

**Matthew Fusco, Esq.**
**Chamberlain, D'Amanda, Oppenheimer & Greenfiled LLP**
**1600 Crossroads Building**
**Two State Street**
**Rochester, NY 14614**



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Buffalo Local Office**

6 Fountain Plaza, Suite 350
Buffalo, NY 14202
(716) 551-4441
TTY (716) 551-5923
FAX (716) 551-4387

Elizabeth Cadle
Director

Melissa General
307 Avenue A
Rochester, New York 14621

Re: Charge No. 165-2005-00029
General v. Center for Disability Rights

Dear Ms. General:

The Commission has determined that it will not bring a lawsuit against the above named Respondent. The issuance of the enclosed Notice of Right to Sue under Title VII of the Civil Rights Act of 1964, as amended concludes the processing of your charge by the Commission. If you decide to sue, you must file a lawsuit in Federal Court within 90 days of receipt of this letter and Notice of Right to Sue.

If you file suit, please forward a copy your court complaint to this office within 10 days. We can then preserve your file and consider your suit when taking other actions. If you have any questions regarding the legal remedies available to you as set out above, please contact the EEOC representative listed in he enclosed Notice of Right to Sue..

On Behalf of the Commission:

Date: **DEC 2 1 2006**

Elizabeth Cadle, Director
Buffalo Local Office

Enclosure:   Notice of Right to Sue

EXHIBIT 2

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**MELISSA GENERAL,**

     **Plaintiff,**

 **vs.**

**CENTER FOR DISABILITY RIGHTS,**

    **Defendant.**

**ANSWER**

**CIV. No. 07-CV-6159**
**T(Fe)**

---

Center for Disability Rights, Inc., the Defendant in the above-captioned matter, through its attorneys, Chamberlain, D'Amanda, Oppenheimer & Greenfield, LLP, Matthew J. Fusco, of counsel and Erin M. Sobkowski, of counsel, answer this Complaint, upon information and belief as follows:

The allegations set forth in the unnumbered paragraph that begins with a checkmark assert the statutory bases and exhaustion of administrative remedies requirements for Plaintiff's claims and require no response.

The allegations set forth in the paragraph that begins with the word "JURISDICTION" assert Plaintiff's claims as to jurisdiction and require no responsive pleading.

  1.  Defendant lacks knowledge or information sufficient to form a belief as to the truth as to Plaintiff's address and telephone number on the date that she filed the instant Complaint as set forth in paragraph 1.

2.      Defendant admits only that Plaintiff was employed by the Center for Disability Rights, Inc., office located at 497 State Street, Rochester, NY 14608 and denies the remaining allegations set forth in paragraph 2.

3.      Defendant admits only that no allegations are set forth in paragraph 3; to the extent that paragraph may contain any allegations of material fact, they are denied.

4.      Defendant admits the allegations set forth in paragraph 4.

5.      With regard to paragraph 5, Defendant denies that it discriminated against Plaintiff.

6.      Defendant admits only that no allegations are set forth in paragraph 6; to the extent that paragraph may contain any allegations of material fact, they are denied.

7.      Defendant admits that it was not committing discriminatory acts against Plaintiff at the time she file her Complaint.  However, to the extent that the allegations in paragraph 7 assume Defendant committed acts of discrimination against Plaintiff on some previous date, Defendant denies those allegations contained in paragraph 7. Defendant avers that Plaintiff failed to follow the instructions set forth ion paragraph 7 in that no date was alleged.

8.      Defendant lacks knowledge or information sufficient to form a belief as to the allegations contained in paragraph 8.

9.      Defendant admits only that no allegations are set forth in paragraph 9; to the extent that paragraph may contain any allegations of material fact, they are denied.

10.     Defendant admits only that no allegations are set forth in paragraph 10; to the extent that paragraph may contain any allegations of material fact, they are denied.

11.     Defendant admits that EEOC issued a Determination and to the extent there are allegations of material fact remaining, Defendant denies them.

12.     Defendant admits only that no allegations are set forth in paragraph 12; to the extent that paragraph may contain any allegations of material fact, they are denied.

13.     Defendant admits only that no allegations are set forth in paragraph 13; subparts b, d, h, i, and j; to the extent those subparagraphs may contain any allegations of material fact, they are denied.  Defendant denies the allegations set forth in subparts a, c, e, f, and g, and it notes that Plaintiff failed to allege discrimination based on disability and failure to provide reasonable accommodations in the administrative proceedings.

14.     Defendant admits only that no allegations are set forth in paragraph 14; subparts a, b, d, e, f, g, or h; to the extent those subparagraph may contain any allegations of material fact, they are denied.  The remaining allegations constitute conclusions of law and require no response.  To the extent that a response is deemed necessary, Defendant denies all of the allegations set forth in paragraph 14.

15.     Defendant admits that it did not intentionally discriminate against Plaintiff.  However, to the extent that the allegations contained in paragraph 15 assume the Defendant committed discriminatory acts in some manner other than intentionally, Defendant denies those allegations.

16.     Defendant admits that it was not committing discriminatory acts against Plaintiff at the time she filed her Complaint.  However, to the extent that the allegations contained in paragraph 16 assume discriminatory acts occurred at some earlier time, Defendant denies those allegations.  Defendant avers that Plaintiff failed to comply with the instructions set forth in paragraph 16 in that no specific facts were alleged.

17.     Defendant avers that Plaintiff failed to comply with the instructions set forth in paragraph 17 in that no copies of any EEOC charges were attached to the instant Complaint.  To the extent that paragraph 17 may contain allegations of material fact, they are denied.

18.     Defendant is without knowledge or information sufficient to form a belief as to the date on which Plaintiff received the Commission's decision that contained information on how to file a civil action.

19.     Defendant admits only that no allegations are set forth in paragraph 19.  To the extent paragraph 19 may contain allegations of material fact, Defendant denies those allegations.

20.     Defendant denies that that Plaintiff filed charges of age discrimination with the EEOC and denies the remaining allegations contained in paragraph 20.

21.     Defendant admits only that no allegations are set forth in paragraph 21; to the extent that paragraph may contain any allegations of material fact, they are denied.

22.     Defendant admits only that no allegations are set forth in paragraph 22; to the extent that paragraph may contain any allegations of material fact, they are denied.

23.     Defendant admits only that no allegations are set forth in paragraph 23; to the extent that paragraph may contain any allegations of material fact, they are denied.

24.     Defendant admits only that no allegations are set forth in paragraph 24; to the extent that paragraph may contain any allegations of material fact, they are denied.

Defendant denies each and every allegation not previously admitted, denied, or otherwise qualified.

Plaintiff's prayer for relief as set forth in the paragraph following the word "WHEREFORE" constitutes conclusions of law and requires no responsive pleading.  To the extent that a response is deemed necessary, defendant denies the allegations set forth therein.

## FIRST AFFIRMATIVE DEFENSE

Plaintiff has failed to state a claim upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

This court lacks jurisdiction over the subject matter of this action.

## THIRD AFFIRMATIVE DEFENSE

Plaintiff has failed to timely and fully exhaust the requisite administrative remedy.

## FOURTH AFFIRMATIVE DEFENSE

All actions taken by the defendant were taken for legitimate and non-discriminatory reasons.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff has failed to mitigate any damages claimed in this action.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff failed to file her Complaint within the requisite statute of limitations.

**WHEREFORE,** the defendant respectfully requests that the Court dismiss plaintiff's complaint with prejudice and award defendant its costs of action.

Dated:  July 16, 2007

s/Matthew J. Fusco
Matthew J. Fusco, Esq.
Erin M. Sobkowski, Esq.
Attorneys for Defendant
CHAMBERLAIN D'AMANDA
OPPENHEIMER & GREENFIELD LLP
Two State Street, Suite 1600
Rochester, New York 14614
Tel.: 585-232-3730
mjf@cdlawyers.com.

TO:     Melissa General
        65 Rustic Street
        Rochester, New York 14609

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**MELISSA GENERAL,**

               **Plaintiff,**

      **vs.**

**CENTER FOR DISABILITY RIGHTS,**

              **Defendant.**

                                  **CERTIFICATE OF**
                                  **SERVICE**

                                  **CIV. No. 07-CV-6159**
                                  **T(Fe)**

---

      I hereby certify that on July 16, 2007, I electronically filed Defendant's Answer with the Clerk of the District using its CM/ECF system and I served the Plaintiff by depositing a true copy thereof enclosed in postpaid wrappers, in an official depository under the exclusive care and custody of the United States Postal Service in New York State, addressed to Melissa General at her last known address set forth below:

Melissa General
65 Rustic Street
Rochester, New York 14609

                         /s/Matthew J. Fusco

EXHIBIT 3

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

FILED
OCT 22 2009
MICHAEL J. ROEMER, CLERK
WESTERN DISTRICT OF NY

MELISSA GENERAL,

                    Plaintiff,                          ORDER
                                                        07cv6159T
          v.

CENTER FOR DISABILITY RIGHTS,

                    Defendant.

On July 24, 2009, defendant filed a motion for extension of time to complete discovery (docket #13). Oral argument was held on October 21, 2009 and plaintiff's counsel indicated he did not oppose the motion for a 60-day extension of the discovery deadline but did oppose an extension of the dispositive motion filing deadline.

Therefore, pursuant to the reasons stated on the record the motion for an extension of time to complete discovery for 60 days is granted. The discovery deadline is extended to December 21, 2009. If defendant intends on seeking an extension of the dispositive motion deadline, such motion should be returnable before Judge Michael A. Telesca.

SO ORDERED.

                              JONATHAN W. FELDMAN
                         UNITED STATES MAGISTRATE JUDGE

Dated: October 22, 2009
       Rochester, New York

**Linda L. Lane**

| | |
|---|---|
| **From:** | webmaster@nywd.uscourts.gov |
| **Sent:** | Thursday, October 22, 2009 4:19 PM |
| **To:** | Courtmail@nywd.uscourts.gov |
| **Subject:** | Activity in Case 6:07-cv-06159-MAT-JWF General v. Center For Disability Rights Order on Motion for Extension of Time to Complete Discovery |

This is an automatic e-mail message generated by the CM/ECF system. Please **DO NOT RESPOND** to this e-mail because the mail box is unattended.
***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

## U.S. DISTRICT COURT

### U.S. District Court, Western District of New York

#### Notice of Electronic Filing

The following transaction was entered on 10/22/2009 at 4:18 PM EDT and filed on 10/22/2009
**Case Name:**      General v. Center For Disability Rights
**Case Number:**    6:07-cv-6159
**Filer:**
**Document Number:** 20

**Docket Text:**
**ORDER granting [13] Motion for Extension of Time to Complete Discovery. Discovery deadline extended to 12/21/2009. If defendant intends on seeking an extension of the dispositive motion deadline, such motion should be returnable before Judge Michael A. Telesca. Signed by Hon. Jonathan W. Feldman on 10/22/2009. (LMD)**

#### 6:07-cv-6159 Notice has been electronically mailed to:

Matthew J. Fusco mjf@cdlawyers.com, lll@cdlawyers.com, mlr@cdlawyers.com

Christina A. Agola caaesq@rochester.rr.com, amiles@agolalaw.com, jalittle@agolalaw.com, nfrechette@agolalaw.com

#### 6:07-cv-6159 Notice has been delivered by other means to:

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1042579058 [Date=10/22/2009] [FileNumber=1470151-

`

EXHIBIT 4



December 9, 2009

Magistrate Judge Jonathan Feldman
233 U.S. Courthouse
100 State Street
Rochester, NY 14614

      Re:    **Melissa General v. Center for Disability Rights,**
            **07-CV-6159**

Dear Magistrate Judge Feldman:

      On October 22, 2009, you issued an order extending discovery sixty (60) days until December 21, 2009, in the above-referenced matter.   Defendant has served Plaintiff with a Notice of Deposition.  Unfortunately, however, Plaintiff has been unavailable due to the fact that she has been out of the country for an extended period of time.  In order to allow the parties to conduct Plaintiff's deposition, Defendant and Plaintiff jointly request that you extend the discovery deadline an additional sixty (60) days until February 22, 2010.

      Thank you for your cooperation regarding this matter.


            Very truly yours,



            Robert G. McCarthy, Esq.


cc:   Ms. Christina A. Agola, Esq.
       Attorney for Plaintiff

            Request granted.

            /s/ Jonathan W. Feldman
            JONATHAN W. FELDMAN
         United States Magistrate Judge

            Dated:  December 17, 2009
            Rochester, New York

**RECEIVED**

DEC 10 2009

Jonathan W. Feldman
U.S. Magistrate Judge
Western District of New York

1600 Crossroads Building
Two State Street
Rochester, NY 14614-1397

585 232 3730
FAX 585 232 3882
www.cdlawyers.com

CHAMBERLAIN D'AMANDA OPPENHEIMER & GREENFIELD LLP

EXHIBIT 5

1

1

2 UNITED STATES DISTRICT COURT

3 FOR THE WESTERN DISTRICT OF NEW YORK

4 - - - - - - - - - - - - - - - - - - - X

5 MELISSA GENERAL,                              )

6          Plaintiff,                           ) Civil No.

7          -vs-                                 ) 07-cv-6159

8 CENTER FOR DISABILTY RIGHTS,                  )

9          Defendant.                           )

10 - - - - - - - - - - - - - - - - - - - X

11

12

13          Deposition of MELISSA GENERAL taken pursuant

14 to notice in the law offices Christina A. Agola, PLLC,

15 2100 First Federal Plaza, 28 East Main Street,

16 Rochester, New York, on Wednesday, February 17, 2010,

17 commencing at 10:05 a.m.

18

19

20 Reported by:

21 COMPUTER REPORTING SERVICE

22 MaryJo O'Connor, RPR

23 Reynolds Arcade Building

24 16 East Main Street, Suite 7

25 Rochester, New York 14614          (585) 325-3170

5

```
 1              M. General - Examination by Mr. McCarthy
 2              And if you need a break at any time, please
 3   just ask me and I'll be happy to grant you a break.
 4              To the extent that there is a question
 5   pending, I would just ask that you finish that
 6   question -- finish the answer before taking the break.
 7              Do you understand?
 8     A.    I understand.
 9     Q.    And could you just state your name and
10   address for the record, please?
11     A.    Melissa General.  I currently live in
12   Malatya, Turkey.
13     Q.    And do you understand that you're obligated
14   here today to testify just as if you were at trial?
15     A.    Yes, I do.
16     Q.    Now, are you currently taking any medications
17   that may impair your memory or your ability to give
18   testimony here today?
19     A.    No, I'm not.
20              MR. McCARTHY:  Can we mark this summons and
21   complaint as Defendant Exhibit 1.
22   (Exhibit 1 - Summons - marked for identification.)
23     Q.    Do you recognize this document in front of
24   you?
25     A.    This one in front of me?
```

1          M. General - Examination by Mr. McCarthy

2     Q.     -- or discriminatory conduct?

3     A.     Several times.  Like I said, coming to work

4  if my boyfriend dropped me off, he was very angry.

5     Q.     I'm sorry.  He?  Who?

6     A.     Oliver.  He would make comments to people in

7  the house such as David.  David Raufeisen.

8     Q.     Who is David Raufeisen?

9     A.     He is a friend of Virginia Kuentz.  He would

10  always make comments to him.  And he would always tell

11  me his comments.

12     Q.     I'm sorry.  David would tell you Mr. Taylor's

13  comments?

14     A.     Always.  And Virginia.

15     Q.     And what type of comments would Mr. Taylor

16  make?

17     A.     He would make sexual comments.

18     Q.     Can you recall some of the sexual comments

19  that he allegedly made?

20     A.     He allegedly made to David Raufeisen, he made

21  to him that he would like to, you know, get in my

22  pants.

23          You know, I have a nice ass, or I have nice

24  this, or I have nice that.

25     Q.     Just rude comments?

1        M. General - Examination by Mr. McCarthy

2            But how many comments did Mr. Taylor make to

3    Mr. Raufeisen?

4        A.    He didn't make them to me.

5        Q.    No.   Right.

6            How many comments do you recall Mr. Taylor

7    making to Mr. Raufeisen?

8        A.    He would tell me -- David was in the home

9    probably three days a week, because he would go and do

10   her shopping, bring her her Depends.  Bring her her

11   orange juice.  Bring her the things that she needs

12   because the SDO wasn't doing his part of living there.

13       Q.    And how many times would David report that

14   Mr. Taylor had made a comment?

15       A.    Every comment.  Every day I was with him he

16   would tell me what he said.

17            He would tell me the verbal abuse of what was

18   going on because Virginia would confide in him and

19   Virginia would always, you know, they were both

20   together telling me.

21       Q.    Let me ask you how many times did

22   Mr. Raufeisen report that he had made sexually

23   explicit comments about you?

24       A.    He made several explicit comments until the

25   fact that I made him write down the comment that he

41

1          M. General - Examination by Mr. McCarthy

2   wrote down for me, signed and dated it.

3          I had asked him to do this.

4   Q.     I'm sorry.  Too many pronouns.

5          Who wrote down a statement?

6   A.     David did.

7   Q.     David wrote down.

8          And what did David's statement --

9   A.     He was stating to me how he wants to get in

10  my pants.

11  Q.     David stated that Mr. Taylor said he wanted

12  to get in your pants?

13  A.     Said this to him.  Yes.

14  Q.     Did David report that Mr. Taylor said

15  anything else in this written statement?

16  A.     Just that he would always try to make sexual

17  comments about me.

18  Q.     Do you have this written statement?

19  A.     Yes, I do.

20         MR. McCARTHY:  Do you know have you produced

21  this statement, written statement.

22         MS. PERSAUD:  I don't know that we produced

23  it but we can check on it.

24         MR. McCARTHY:  Okay.  Terrific.

25         To the extent that it has not been produced,

1            M. General - Examination by Mr. McCarthy

2    I would ask that you produce the written statement.

3        Q.    And when did Mr. Raufeisen make this written

4    statement?

5        A.    He made it just after.  Just after the fact

6    that I was terminated by Oliver, the SDO.

7        Q.    So when were you terminated by Mr. Taylor?

8        A.    I was terminated on the 26th.

9        Q.    The night that the police were called?

10       A.    Yes.  I believe.

11             I'd have to check the dates because, like as

12   I say, it's been so long.  I know that it was the very

13   near future is all.  The dates were very near to each

14   other.

15             I also have a signed statement --

16       Q.    Please.  Please.  Wait for the question.

17             Did you ask Mr. Raufeisen to make this

18   written statement for you?

19       A.    He said he would do it for me.

20       Q.    He offered to do it?

21       A.    He offered.

22             He was giving me, Melissa, he gave me more

23   direction than the Center For Disability Rights.

24       Q.    When Mr. Raufeisen -- so Mr. Raufeisen had

25   verbally communicated that Mr. Taylor had made these

1          M. General - Examination by Mr. McCarthy

2     statements to you previously?

3          A.    And he saw them with his own eyes.  If I was

4     turned around, you know they would be in the room, two

5     men, you know, and whatever he, you know, the comments

6     or the things or how Oliver would look at me, this is

7     what I'm getting from him.

8          Q.    Right.

9          A.    So he's telling him this.

10               I didn't see what was going on, but I also

11    know he was very -- how should I say it -- he was very

12    also verbally abusive -- he was always very -- he's a

13    horrible man to both of them.

14               He treat the both of them like they had no

15    minds.

16         Q.    Okay.  But Mr. Raufeisen had reported to you

17    that Mr. Taylor had made sexually explicit statements

18    before September of 2004 --

19         A.    Yes.

20         Q.    -- correct?

21         A.    Absolutely.

22         Q.    Did you ever report the fact that

23    Mr. Raufeisen made these reports --

24         A.    Yes.

25         Q.    Please let me finish.

44

1        M. General - Examination by Mr. McCarthy

2             Did you ever report to CDR the fact that

3    Mr. Raufeisen had told you that Mr. Taylor was making

4    sexually explicit comments?

5        A.    Yes, I have.

6        Q.    Prior to 2004?

7        A.    Prior to that.

8        Q.    September of 2004?

9        A.    Yes.

10       Q.    When did you report to CDR that Mr. Raufeisen

11   had informed you that Mr. Taylor was making sexually

12   explicit comments?

13       A.    Prior to that.  Prior to that date.  A while

14   prior to that.

15             Probably maybe a few months before that I had

16   called Center For Disability Rights, left a message.

17       Q.    Who did you leave a message with?

18       A.    The Human Resource Department.

19             I never got a return call back on that issue,

20   and I never pursued it.

21       Q.    How many times did you call the Human

22   Resource Department?

23       A.    How many times in total have I called?

24       Q.    How many times did you call to report that

25   David Raufeisen had reported that Mr. Taylor was

```
 1          M. General - Examination by Mr. McCarthy
 2   making sexually explicit comments?
 3       A.     Again, please the question?
 4       Q.     Sure.
 5          How many times did you call the Human
 6   Resource Department at CDR regarding Mr. Raufeisen's
 7   reports that Mr. Taylor was making sexually explicit
 8   comments?
 9       A.     I called and reported the comments, okay,
10   that were made.
11          The sexual -- what I want to say is when I
12   made that, when I made the first call to Center For
13   Disability Rights, he told me that if I -- he told me
14   that I would lose my job, Oliver, okay, when I went to
15   make these calls because I didn't like what was going
16   on.
17       Q.     I know.  I'm sorry.
18          How many times did you call CDR --
19       A.     I called twice.
20       Q.     -- regarding these sexually explicit
21   comments?
22       A.     No. That one comment and after.  And both
23   times I got no responsive action.
24       Q.     To be clear, you called one time before
25   September of 2004, correct?
```

M. General - Examination by Mr. McCarthy

A.      Correct.

Q.      And you left a message?

A.      Correct.

Q.      Then you called again after September 24, 2004 --

A.      Yes.

Q.      -- or September 26, 2004?

A.      September 26th.  Yes.

Q.      Did Mr. Taylor ever make any sexually explicit comments directly to you?

A.      Yes, he did.

Q.      And what did he say directly to you?

A.      He would say something like -- it was under his breath -- like, "Oh, your boobs look good" or "Your ass looks good."

Q.      And how many times would he make a sexually explicit comment to you?

A.      He made it when he would come home drunk, and I didn't say anything -- I didn't do anything because of I felt for Virginia.

        I didn't do anything at that moment.  She did not want me to leave.

Q.      How many times would he have made these statements to you?

47

1    M. General - Examination by Mr. McCarthy

2    A.    Total?

3    Q.    Yes.

4    A.    Probably more than six.

5         Seven events where he came home drunk and

6    would make these comments and we would go into the

7    room, me and Virginia, and sit in a room until my

8    shift was done and I left without seeing him.

9    Q.    Did you ever report that Mr. Taylor had made

10   these comments directly to you to CDR?

11   A.    I called to report two incidents, and that

12   was before and after September.

13        One that happened before and one that

14   happened after.

15        I to my knowledge go to my consumer because

16   they are the ones who do the hiring and firing and say

17   this is what's going on.  This is what's happening.

18   Q.    So you consider the consumer the employer?

19   A.    Yes.

20        Not my employer.  I consider the Center For

21   Disability Rights my employer.

22        But they, according to the policy, the Center

23   For Disability Rights policy, they are the ones who

24   did the hiring and firing but the actual pay comes

25   from Medicaid.

M. General - Examination by Mr. McCarthy

1

2    Q.    So, basically, you called CDR one time prior

3    to September 26, 2004 --

4    A.    Yes, I have.

5    Q.    -- to report --

6    A.    To report him.

7    Q.    To report him.

8          In total?  You called them one time in total?

9    CDR one time in total?

10   A.    Two times.

11   Q.    Let me rephrase the question.

12         You called CDR one time prior to

13   September 26, 2004, to report Mr. Taylor?

14   A.    Correct.

15   Q.    And the one time that you called CDR prior to

16   September 26, 2004, you left a message; is that

17   correct?

18   A.    Correct.

19   Q.    Do you recall what you said on the message?

20   A.    Yes.  I left a message that I would like for

21   them to return my call, and this is dealing with

22   Oliver and a sexual harassment, and left my full name,

23   my aid number.  And was never contacted.

24         With an apology after that fact of what

25   happened from Mr. Taylor, did I not pursue anything.

49

1          M. General - Examination by Mr. McCarthy

2     Q.    I'm sorry.  You received an apology from

3  Mr. Taylor?

4     A.    Yes.  I received an apology from him.

5     Q.    And when did you receive an apology from

6  Mr. Taylor?

7     A.    After.

8     Q.    After what?

9     A.    When I came to work, he knew what was

10  happening.  He was drunk.

11          He knew what happened, and he apologized

12  because I said I'm going to look for other work to my

13  consumer.  I was telling her this.

14          So he came and apologized to me.

15     Q.    So Mr. Taylor had made sexually explicit

16  comments to Mr. Raufeisen, correct?

17     A.    Correct.

18     Q.    And he had come home drunk six or seven times

19  and made sexually explicit comments directly to you,

20  correct?

21     A.    Correct.

22     Q.    Can you recall any other specific examples of

23  Mr. Taylor behaving in a harassing or discriminatory

24  manner?

25     A.    No.

50

1    M. General - Examination by Mr. McCarthy

2    Q.    Do you recall any CDR employee or other SDO

3  engaging in harassing or discriminatory conduct?

4    A.    No.

5    Q.    Did you ever play cards with Mr. Taylor while

6  working as an attendant?

7    A.    No.

8    Q.    Did you ever have an alcoholic beverage with

9  Mr. Taylor while working as an attendant?

10   A.    No.

11   Q.    Did Mr. Taylor ever tell you that he was

12  falling in love with you?

13   A.    No.

14   Q.    Did Mr. Taylor ever provide you with a

15  massage?

16   A.    No.

17   Q.    Did you ever exchange gifts with Mr. Taylor?

18   A.    A card.

19   Q.    What was the occasion?

20   A.    Not a gift.  It was a card.  It was a

21  birthday card.

22   Q.    Okay.

23   A.    That we both picked out, me and

24  Virginia Kuentz.

25   Q.    Did you ever kiss Mr. Taylor?

1          M. General - Examination by Mr. McCarthy

2     A.    No.

3     Q.    Did you ever try to look for another consumer

4  while working for Virginia Kuentz?

5     A.    Yes, I did.

6     Q.    Did you ever apply with another consumer?

7     A.    Actually, I called Center For Disability

8  Rights.  They are the ones who I was supposed to be on

9  this emergency list.

10     Q.    I'm sorry.  What is an emergency list?

11     A.    An emergency list is where they felt that I

12  should find hours because of what happened.

13     Q.    Hold on just so we're clear.

14           What time are we talking?

15     A.    What time?  What do you mean?

16     Q.    You called CDR regarding an emergency list.

17  Was this after September of 2004?

18     A.    Yes.

19     Q.    Did you ever try and look for another

20  consumer while you were working for Virginia Kuentz

21  prior to September of 2004?

22     A.    No.

23     Q.    Why not?

24     A.    Why?  I had a great job.  I loved my job.

25           Why would I do that?

1          M. General - Examination by Mr. McCarthy

2     Q.    At some time in September of 2004, you were

3  terminated by Mr. Taylor; is that correct?

4     A.    Some time in 2004 --

5     Q.    September of 2004?

6     A.    My last working date was the date that I

7  left.

8     Q.    The last working date was September 26, 2004?

9     A.    2004.  It could be.

10          I don't know because I'd have to look.  It's

11  been so long.  It's been many years.

12     Q.    Okay.  So you're not sure of the last working

13  date, but it was in September of 2004?

14     A.    Yes.

15     Q.    And it was your last working day -- or excuse

16  me.  Strike that.

17          Mr. Taylor terminated your working

18  relationship --

19     A.    Yes, he did.

20     Q.    -- is that correct?

21     A.    Yes, he did.

22     Q.    How did Mr. Taylor notify you that the

23  working relationship was being terminated?

24     A.    He called me and said I was terminated on

25  Virginia Kuentz's phone.

53

M. General - Examination by Mr. McCarthy

Q.     So while you were working?

A.     While I was working.

So I called David and said "Can you come here so I can finish.  So I can leave."

Because someone has to be there because she has MS and in a wheelchair and cannot be alone.

Q.     You don't recall what day this was?

A.     I don't recall.  I'd have to look it up.

Q.     And why did you call David to take your place?

A.     I called David to take my place because I could not count on the SDO to come and take my place, so I called him to make sure that he's in her care. So he came.  David.

Q.     Okay.  After Mr. Taylor terminated you, did you notify CDR that you believed that he was engaging in any harassing or discriminatory conduct?

A.     Yes, I did.

Q.     And who at CDR did you notify?

A.     I notified Mary.  I left a message for Ms. Willoughby.

Q.     You notified Mary Willoughby?

A.     Yes.  Willoughby.

Q.     And what did you notify Miss Willoughby of

54

1          M. General - Examination by Mr. McCarthy

2   Mr. Taylor's conduct?

3          A.    I notified her as soon as everything happened

4   immediately.

5          Q.    And how did you notify her?

6          A.    By telephone.  A few times.

7          Q.    Did you speak with her directly?

8          A.    I spoke with her -- I didn't speak with her

9   until two weeks later.  I left messages and got no

10  return telephone call until two weeks when I had

11  already went forward to the EOCC [sic] or EEOCC [sic].

12         Q.    After you were terminated, do you know

13  whether Miss Kuentz removed Mr. Taylor as SDO?

14         A.    I have no information on that.

15               I never called.  Never spoke with her after

16  that.

17         Q.    Do you know whether CDR had the authority to

18  remove an SDO?

19         A.    I don't know.

20         Q.    You testified earlier that Mr. Taylor lived

21  in Miss Kuentz's house; is that correct?

22         A.    That's correct.

23         Q.    And did he live in the house after you were

24  terminated?

25         A.    I don't know.

1          M. General - Examination by Mr. McCarthy

2     Q.     Would you have returned as Miss Kuentz's

3   attendant if Mr. Taylor remained as her SDO?

4     A.     No.

5     Q.     Would you have returned as Miss Kuentz's

6   attendant if Mr. Taylor continued to reside in her

7   home?

8     A.     No.

9     Q.     Following your termination as Miss Kuentz's

10  attendant, were you placed on the attendant list?

11    A.     Yes.

12    Q.     Did you find a consumer to work for from the

13  attendant list?

14    A.     Yes.

15    Q.     And who did you work for next?

16    A.     Marjorie Walsh.

17    Q.     Did you work for a Shelly Perrin at any time?

18    A.     Yes.  In between hours.  Yes.

19    Q.     Do you recall when you began to work for

20  Shelly Perrin?

21    A.     I was picking up hours in between trying to

22  find my 40 hours.

23         I don't recall any of the dates, actually,

24  because it's been so long but I have pay stubs.

25  Paychecks.

64

1       M. General - Examination by Mr. McCarthy

2           I'd have to look at my calendars, too.

3           I don't have any recall on the dates because

4   it's such a long time ago.

5       Q.   So you voluntarily left --

6       A.   Yes.

7       Q.   -- the Bonomos and Walsh?

8       A.   Yes.

9       Q.   In 2006 you voluntarily left the Bonomos and

10  Walsh, correct?

11      A.   2005 it says here.

12      Q.   No.  I understand.  I'm sorry.  Let me

13  rephrase the question.

14          You voluntarily stopped working for the

15  Bonomos and Walshes --

16      A.   Yes --

17      Q.   -- in 2006 --

18      A.   I had --

19      Q.   Let me finish.  I'm sorry.

20          You voluntarily stopped working for the

21  Bonomos and Miss Walsh in 2006?

22      A.   Yes.

23      Q.   When did you move to Turkey?

24      A.   About 2007.  Back and forth.

25          Between six and now.  Yes.  2007.

1    M. General - Examination by Mr. McCarthy

2    Q.    So is it your testimony that the CDR -- I

3    guess I'm confused.

4    Are you alleging that CDR prevented you from

5    finding work with her consumers?

6    A.    No.  They didn't prevent me.

7    And they didn't help me until I -- when I

8    told her that I had already made arrangements with

9    taking these matters further and this is when they

10   started to move a little faster.

11   Q.    And what action would you have liked to have

12   seen taken?

13   A.    Prompt action.  Calling me back not two weeks

14   later.

15   The action of finding my 40-hour job.  The

16   action of letting me know what's going on with this

17   Oliver.  What's going on with this Virginia Kuentz.

18   What's happening.  What is being corrected.

19   And to make them a better company.  It's not

20   just about me.

21   Q.    Well, let me ask what action could have been

22   taken with regard to the promptness?

23   A.    The promptness?

24   Q.    Yes.

25   A.    The promptness to call me in, to call the

70

M. General - Examination by Mr. McCarthy

1   M. General - Examination by Mr. McCarthy

2   sides and to call everybody.

3          I don't understand.  I don't know what

4   happens.  I've never been in this before.

5          Promptness of being directed somewhere.

6          There is my answer.

7   Q.     Directed somewhere?  What do you mean by

8   directed somewhere?

9   A.     Somewhere to what is right.

10  Q.     After you left the Kuentz, was your name

11  placed on the attendant list do you know?

12  A.     Yes.

13  Q.     Is it your position that you suffered

14  monetarily --

15  A.     Yes.

16  Q.     -- as a result of --

17         How is it that you suffered monetarily?

18  A.     Monetarily I have two boys to take care of.

19         Monetarily I have a house to pay for.  I have

20  everything to -- I have my life to live.

21  Q.     What could CDR have done to insure that you

22  did not suffer monetarily?

23  A.     I actually went through all of this with a

24  mediator, and at that time just to get my loss and to

25  have my, you know, just my life in order as it was.

1          M. General - Examination by Mr. McCarthy

2          Okay.  I already presented all of that.  It's

3  all in your papers.

4     Q.    No.  I'm asking what did they do to prevent

5  you from making money.

6     A.    What did they do to prevent me?

7     Q.    Yes.

8     A.    They prevented a lot of things.  They

9  prevented my -- I wasn't -- I was in a stress.

10          I wasn't able to work at that time.  My son

11  became a diabetic.  I was going through so many

12  changes.

13          All of my bills.  I was never late on my

14  bills.  I was never late on paying anything.  I was

15  always on time with everything, and then this happens.

16     Q.    Did CDR do anything to prevent you from

17  making any money as an attendant?

18     A.    As an attendant working for them?  No.

19     Q.    Did you ever turn down any positions as an

20  attendant in 2004, 2005, or 2006?

21     A.    I believe just turning down one because I had

22  already found work for Marjorie Walsh.

23     Q.    Are you alleging that you suffered any

24  physical ailments or injuries as a result of the

25  alleged discrimination?