UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MELISSA GENERAL,                                CIV. No. 07- CV- 6159T

              Plaintiff,

    vs.

CENTER FOR DISABILITY RIGHTS,

              Defendant.

---

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO EXTEND DISPOSITIVE MOTION DEADLINE AND FOR SUMMARY JUDGMENT

## PRELIMINARY STATEMENT

On October 22, 2009, Magistrate Judge Jonathan W. Feldman extended discovery and allowed Defendant the opportunity to depose Plaintiff. However, Judge Feldman ordered that any motion to extend the dispositive motion deadline be made before Judge Michael A. Telesca. The deposition and the complete record reveal that Plaintiff cannot make a prima facie sexual discrimination claim under Title VII. Plaintiff cannot show that her terms and conditions of employment were altered by severe and pervasive harassment, nor can she show that Defendant was negligent in addressing her concerns. Therefore, Defendant requests that the deadline for dispositive motions be extended and this motion for summary judgment be heard and granted in its entirety.

## BACKGROUND FACTS

Defendant, the Center For Disability Rights, Inc. ("CDR"), is incorporated under the non-profit corporation laws of the state of New York. Defendant's activities include advocacy, self-help services, training, housing, recreation, and counseling to businesses, residents, agencies and individuals with disabilities. See Affidavit of Mary Willoughby, dated May 11, 2010 ("Willoughby Aff."), at ¶2.

CDR is contracted by the Monroe County Department of Social Services to act as a vendor and participate in the Consumer Directed Personal Assistance Service Program ("CDPAS"). Willoughby Aff., at ¶3. CDPAS is a Medicaid funded home care services program that allows qualified chronically ill or physically disabled individuals greater flexibility in obtaining services. The benefit of the program is that eligible chronically ill or disabled individuals are able to oversee their own care while living at home. Willoughby Aff., at ¶3. The chronically ill or disabled individual participating in

CDPAS is known as a consumer and is responsible for, among other things, recruiting, interviewing, hiring, determining tasks to be completed, training, supervising, scheduling, ensuring the attendant work the hours that he or she is scheduled. The consumer is responsible for distributing paychecks to the attendant. Willoughby Aff., at ¶6. In the event a consumer is unable to oversee their own care, the consumer must select a designated representative or self-directed other ("SDO") to act on their behalf. Willoughby Aff., at 7¶.

As a vendor, CDR is responsible for processing payroll, monitoring the completion of employment records, and acting as employer of record with regard to tax, insurance and workers compensation. Willoughby Aff., at ¶8. However, CDR does not assist in the hiring, supervising or termination of an attendant. These decisions are in the sole discretion of the consumer or the SDO. Willoughby Aff., at ¶9.

Plaintiff Melissa General began working as an attendant on or about May 1, 2001. was interviewed and hired by consumer Marie J. Webster. Willoughby Aff., at ¶14. In the Summer of 2003, Ms. General interviewed with Ms. Keuntz and her SDO, Oliver Raymond Taylor. On June 17, 2003, Ms. General began working for Ms. Keuntz and Mr. Taylor. Willoughby Aff., at ¶15.

Ms. General alleges that while working for Ms. Keuntz and Mr. Taylor, a friend of Ms. Keuntz's, David Raufeisen, informed her on numerous occasions that Mr. Taylor was making sexually explicit comments about her. Deposition of Melissa General, dated February 17, 2010 ("General Dep."). at pp. 39-40. In addition, Ms. General alleges that while working for Mr. Taylor, she heard him make sexually explicit comments on six (6)

or seven (7) occasions, including "your boobs look good" and "your ass looks good."
General Dep. at p. 47.

Nonetheless, Ms. General enjoyed her job and did not try to look for an opening
with another consumer during the time that she worked for Ms. Keuntz and Mr. Taylor.
General Dep. at p. 51. Ms. General claims she called the CDR Human Resource
Department on one occasion, but did not reach anyone and had to leave a voice message.
Ms. General states that she did not follow-up the message or pursue it any further after
Mr. Taylor apologized. General Dep. at p. 48-49.

On September 26, 2004, the police were called to Ms. Keuntz's home during Ms.
General's shift as a result of allegations. General Dep. at pp.36-38. As a result, Mr.
Taylor and Ms. General got into argument, where Ms. General inferred that she had been
terminated. Id.

On or about September 27, 2004, Mr. Taylor visited CDR to complain about Ms.
General and spoke with CDPAS Director Melanie Menough. Willoughby Aff., at ¶16
The next day, on September 28, 2004, Ms. General sent CDR Human Resource Director
Mary Willoughby an email indicating that Mr. Taylor was verbally abusive to Ms.
Keuntz and sexually harassing her. Willoughby Aff., at ¶17.

As a result of the parties' complaints, CDR began an investigation of the
allegations made by Ms. General. Willoughby Aff., at ¶18. CDR recommended that Ms.
Keuntz choose another SDO, but Ms. Keuntz refused. Willoughby Aff., at ¶22. Given
the allegations made, CDR and Ms. General agreed that she should not return as Ms.
Keuntz's attendant. Willoughby Aff., at ¶20; General Deposition at p. 55.

Ms. General was placed on the attendant availability list. Willoughby Aff., at ¶23.

Ms. General was interviewed and hired by consumer Shelly Perrin less than one week after she complained to CDR Human resources director Mary Willoughby and began working for Ms. Perrin on October 11, 2004. Willoughby Aff., at ¶¶14, 24.

Ms. Perrin only required Ms. General to work twelve hours per week, meaning her weekly schedule had been reduced. Willoughby Aff., at ¶¶ 14 (Ex.C); 25.  CDR is not responsible for contacting attendants regarding available work.  Nonetheless, CDR employee Aaron Watkins attempted to contact Ms. General on December 13, 2004, but she did not return his call.  On that same day, consumer Francine Bunton called and left a message on Ms. General's cell phone offering an additional sixteen (16) hours per week, but Ms. General never returned her call.  On December 19, 2004, Ms. General did not appear for an interview with a consumer.  On January 10, 2005, CDR was notified that Ms. General had cancelled an interview with a consumer and her SDO. Willoughby Aff., at ¶25.

In February of 2005, Ms. General interviewed with Christy Wilson and was hired to work twenty-four (24) hours per week.  Willoughby Aff., at ¶26.  This job coupled with her job with Ms. Perrin brought Ms. General to thirty-six (36) hours per week. Willoughby Aff., at ¶27.

Ms. General continued to work as an attendant until September 1, 2006. Willoughby Aff., at ¶28.

Ms. General has resided in Malatya, Turkey since early 2007.  General Dep. at pp.5, 64..

## ARGUMENT

## POINT I

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT SHOULD BE HEARD

On October 22, 2009, Magistrate Judge Jonathan W. Feldman extended discovery sixty (60) days based on a motion made by Defendant.   Judge Feldman ordered that any requests for extensions to file dispositive motions be made before this Court.  Defendant was unable to schedule the necessary deposition of Plaintiff within sixty (60) days due to the fact that Plaintiff now resides in Turkey.   Therefore, Justice Feldman extended discovery an additional sixty (60) days in order to depose Plaintiff.  Plaintiff was deposed on February 17, 2010.  Based on the deposition, Defendant is compelled to make this motion to extend time to file dispositive motions and motion for summary judgment.

Rule 16(b) (4) provides that "a schedule may be modified only for good cause and with the judge's consent."  Some courts have held that "good cause" is determined by the diligence of the moving party."  However, the Western District of New York in Fuller v. Summit Treestands LLC, 2009 WL 483188 (W.D.N.Y. 2009) has held that diligence "is not, however, the only consideration." Fuller, 2009 WL at *6.  In Fuller, the court found that district courts, in the exercise of their discretion under Rule 16(b)(4), may consider other relevant factors including whether allowing a modification will prejudice the non-moving party. Fuller, 2009 WL at *6 (citing Kassner v. 2nd Avenue Delicatessen Inc., 496 F.3d 229, 244 (2d Cir.2007)).  The Fuller decision added that "diligence" should no longer be determinative when considering modification. See

Fuller 2009 WL at *6, Fn.5. (questioning the validity of the finding that "good cause" requires the party seeking relief to demonstrate diligence); see also Jones v. Goord, 2007 WL 4377784 (N.D.N.Y.) (finding an attorney's work load was sufficient cause to extend discovery four months after the discovery deadline had expired).

For example, in Cole v. Fischer, 2010 WL 681064 (W.D.N.Y. 2010), Defendants moved for an extension of time to file a dispositive motion under Rule 16(b)(4) after the deadline for such motions had passed. Id. At *2. Defendants asserted that they were precluded from filing such a motion until discovery was complete. Id. Defendants also pointed out that a summary judgment motion would focus the issues and reduce the number of witnesses needed. Id. The Court agreed and granted the motion for those reasons. Id. At *3.

As was the case in Cole v. Fischer, here, Defendant was precluded from making a viable motion for summary judgment until discovery was completed. In addition, like the defendant in Fischer, this Defendant asserts that a motion for summary judgment would, at the very least, focus the issues and save the Court and the parties' time and expense.

Plaintiff would not be prejudiced by allowing the parties to move for summary judgment, but would benefit. Plaintiff lives in Turkey. As was demonstrated while the parties attempted to schedule her deposition, Plaintiff's ability to appear is limited. Therefore, a decision on the merits of claims could benefit the Plaintiff by either saving her the time and expense of unnecessary travel or, at the very least, narrowing the scope and focus of the issues.

For these reasons, Defendant respectfully requests that the motion to extend the dispositive motion deadline be granted.

## POINT II

### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT SHOULD BE GRANTED

Under Federal Rules of Civil Procedure 56(c), summary judgment shall be entered if, when viewing the evidence in the light most favorable to the non-moving party, the court determines that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Eastman Kodak v. Image Technical Servs., Inc., 504 U.S. 451, 456 (1992). Where the moving party does not bear the burden of proof, as is the case here, the moving part shall prevail by pointing to the absence of evidence to support an essential element of the non-moving party's claim. Brady v. Town of Colchester, 863 F.2d 205, 211 (2d Cir. 1988). Here, even accepting Ms. General's allegations to be true, ther is insufficient evidence to support a claim of discrimination.

The allegations contained in Plaintiff's Complaint indicate that her sexual discrimination claim is based on an alleged hostile work environment while working as an attendant for Virginia Keuntz and Ms. Keuntz's SDO Raymond Taylor from July 9, 2003 through September 26, 2004. In order to prevail on a hostile work environment claim, Plaintiff must demonstrate two elements: (1) that her workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of her work environment; and (2) that a specific basis exists for imputing the conduct that created the hostile work environment to the employer. Petrosino v. Bell

Atlantic, 385 F.3d 210 (2d Cir. 2004); Mack v. Otis Elevator Co., 326 F.3d 116 (2d Cir.

2003).   Here, the record shows that Plaintiff is unable to prove either element.

### A. Plaintiff's Workplace Was Not Sufficiently Severe or Pervasive to Alter the Conditions of Her Employment

In order to establish the first element of a hostile work environment claim, the

complaining party must show that "the workplace is permeated with discriminatory

intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the

conditions of employment and create an abusive working environment." Harris v.

Forklift Sys., Inc., 510 U.S. 17, 21 (1993); see also Demoret v. Zegarelli, 451 F.3d 140,

149 (2d Cir. 2006).  Plaintiff must demonstrate "not only that she subjectively perceived

the environment to be abusive, but also that the environment was objectively hostile and

abusive." Demoret, 451 F.3d at 149.  Plaintiff can do this by showing either that a single

incident was extraordinarily severe, or that a series of incidents were sufficiently

"continuous and concerted" so as to have altered the conditions of her employment. Cruz

v. Coach Stores, Inc., 202 F.3d 560 (2d. Cir. 2000); Demoret, 451 F.3d at 149.

Typically, isolated incidents of unprofessional conduct or offensive utterances

will not support a claim for discriminatory conduct. Byrne V. Telesector, 2009 WL

2019951 (2d. Cir. 2009) For example, in MacMaster v. City of Rochester, 2007 WL

2892015 (W.D.N.Y. 2007), the Western District held that evidence that plaintiff's

supervisor asked her to breakfast, "hovered" over her, watched her work, winked at her,

asked her to wear red coveralls because they would make her "look hot," sent a picture of

her to co-workers at another location, and told co-workers that he wanted to "get in her

pants" was not sufficient to alter her conditions of employment. See Weiss v. Coca-Cola

Bottling Co. of Chicago, 990 F.2d 333, 447 (7th Cir. 1993) (holding there was no

actionable harassment where plaintiff's supervisor asked her on dates, called her a "dumb

blond," placed his hand on her shoulder several times, attempted to kiss her and placed "I

love you" signs in her work area because the incidents were not severe and relatively

isolated); Saxton v. AT&T Co., 10 F.3d 526, 534-35 (7th Cir. 1993) (finding supervisor's

inappropriate conduct was not so severe as to create a hostile work environment where he

touched and rubbed plaintiff's leg, pulled plaintiff into doorway attempting to kiss her

and lurched at her as if to grab her); Inganamorte v. Cablevision Systems Corp., 2006

WL 2711604 (E.D.N.Y. 2006) (finding supervisor's staring and winking may have made

plaintiff uncomfortable but did not rise to the level of hostile work environment);

Gonzalez v. v. Kahan, 1996 WL 705320 (EDNY 1996) (stating that conduct such as

touching plaintiff's hand, saying that she looked "hot," and staring at her was too mild

and innocuous to constitute sexual harassment).

      Ms. General's allegations consist of Mr. Raufeisen informing her that Mr. Taylor

was making suggestive comments about her and an estimated six (6) or seven (7)

incidents over a year and half period where Mr. Taylor made an inappropriate comment

directly to her, such as, "Oh, your boobs look good" or "Your ass looks good." Melissa

General Deposition at p.43-44, 46-47. There is no evidence that Mr. Raufeisen was

telling the truth. Nonetheless, even assuming that Mr. Taylor made suggestive comments

to Mr. Raufeisen, Ms. General would not have been subjected to such comments had Mr.

Raufeisen not reported them to her. While this does not excuse the alleged comments, if

made, it certainly reduces the severity of the comments made or hostility created. See,

e.g., Lopes v. Café Centrale, 548 F.Supp.2d 47 (S.D.N.Y. 2008) (dismissing allegations

of discriminatory comments made to third parties).

With regard to the six (6) or seven (7) incidents where Mr. Taylor allegedly made inappropriate comments to Ms. General, these comments were made over a year and a half, and while such comments are extremely unprofessional, these comments alone do not establish a hostile work environment.  Mr. Taylor's alleged six (6) or seven comments (7) are no more egregious or pervasive than the incidents detailed in the cases above. Thus, under any objective standard, these six or seven isolated comments do not establish a hostile work environment.

Moreover, even if the court were to adopt a purely subjective standard, Ms. General's actions indicate that she did not find the reported comments or the alleged six or seven comments by Mr. Taylor to be sufficiently severe or pervasive to create a hostile work environment.   Attendants may choose to sever an employment relationship with a consumer at-will.  Willoughby Aff., at ¶9.   However, despite Ms. General's present claims, she never attempted to look to work for another consumer during the entire year and a half that she worked for Ms. Keuntz and Mr. Taylor. General Dep. at p. 51.  In fact, when asked why she didn't look for another job, Ms General responded, "Why?  I had a great job.  I loved my job."  General Dep. at p. 51. These are hardly the words of someone suffering under severe and pervasive harassment.

Ms. General claims she made a single call to the Human Resource Department at CDR and left a message.  General Dep. at  p. 48.  Even assuming this is true, she never followed up her telephone call because she admits that she did not pursue anything after Mr. Taylor offered her an apology.   General Dep. at 48.  If the alleged harassment was sufficiently severe and pervasive, it is reasonable to expect that Ms. General would have made a follow-up attempt to reach CDR.   Conveniently, Ms. General only pursued her

claims after she believed Mr. Taylor had terminated her employment.  General Dep. at p. 53.

### B.  No Basis For Imputing CDR For the Alleged Actions of Mr. Taylor

Even if the Court finds that the allegations demonstrate severe and pervasive harassment sufficient to alter Ms. General's terms and conditions of employment, CDR took immediate action to remedy the situation, and therefore cannot be held liable for the actions of Mr. Taylor.

Mr. Taylor was assigned by Ms. Keuntz to serve as her SDO.  CDR did not interview, hire, pay, insure or in any way employ Mr. Taylor.  The Second Circuit has not formally determined whether an employer is liable for the acts of non-employees in discrimination claims.  Quinn v. Green Tree Credit Group, Corp., 153 F.3d 759 (2d Cir. 1998).  However, the Second Circuit has indicated that to the extent that such a duty exists, "such a duty can be no greater than that owed with respect to co-worker harassment." Quinn, 153 F.3d at 766.   When a co-worker is accused of harassment, as opposed to a supervisor, the employer is only responsible for its own negligence.  Duch v. Jakubek, 588 F.3d 757, 762 (2d Cir. 2009) (citing Distasio v. Perkin Elmer Corp., 157 F.3d 55, 63 (2d Cir. 1998)).  This means in order to prevail a complaining party must show that the employer knew of the harassment and failed to take any remedial action. Duch, 588 F.3d at 762.

Ms. General claims she made a telephone call to the CDR Human Resource Department on one occasion.  Ms. General further claims that she was unable to reach someone and left a message.  As stated above, even if true, Ms. General admits she never

followed up the voice message because she received an apology from Mr. Taylor. General Dep., at p. 48.

The first complaint of which CDR has record is an email that Ms. General sent to Mary Willoughby on September 27, 2004, alleging, among other things, sexual harassment. Willoughby Aff. at ¶17. CDR interviewed Mr. Taylor regarding his relationship with Ms. General. Willoughby Aff., at ¶16. Mr. Taylor denied the allegations. CDR did not, and does not, have the authority to remove an SDO without the consumer's consent. Willoughby Aff., at ¶7. Therefore, CDR encouraged Ms. Keuntz to replace Mr. Taylor, but was unsuccessful. Willoughby Aff., at ¶21. Based on the situation, and its inability to remove the SDO, CDR and Ms. General decided that she should not return to work for Mr. Taylor and Ms. Keuntz. Willoughby Aff., at ¶ 20; General Dep. at p. 55. CDR placed Ms. General on the availability list and within one week had found her replacement work. Willoughby Aff., at ¶24. While the replacement work did not offer equivalent hours, CDR continued to keep Ms. General on the availability list. Willoughby Aff., at ¶23. Although CDR does not typically schedule interviews for attendants, it made several attempts to schedule interviews for Ms. General with prospective consumers. Willoughby Aff., at ¶25. Ms. General did not appear or return the calls of several consumers. Willoughby Aff., at ¶25. Nonetheless, by February of 2005, Ms. General was receiving thirty-six (36) hours of work per week. Willoughby Aff., at ¶27.

Thus, CDR took every reasonable step to protect Ms. General. Upon learning of the alleged harassment, CDR immediately interviewed the parties and separated the

accuser from the accused.  CDR went to great lengths to ensure that Ms. General was able to find replacement work with other consumers.

It is unclear what conduct by CDR that Ms. General finds discriminatory.  CDR does not have the authority to remove Mr. Taylor and Ms. General admits that she did not want to return.   General Dep. at p. 55.  Ms. General stated that CDR never prevented her from finding work or making any money, nor is she claiming that she suffered any physical injuries.  General Dep. at p. 69.  Without a true claim for damages, Ms. General has failed to state a cause of action.   Indeed, the only misconduct cited by Ms. General during her deposition concerned  CDR's apparent failure to keep her apprised of its investigation.  Id.  Even if this were true, this failure would not have resulted in any monetary damages and could not be categorized as discrimination under Title VII.

## CONCLUSION

The deposition of Plaintiff confirmed that she is unable to state a cause of action. Therefore, Defendant asks that the deadline for dispositive motions be extended and this motion for summary judgment be granted.

Dated:   May 11, 2010

<div style="margin-left:40%">

s/Robert G. McCarthy
Robert G. McCarthy, Esq.
Attorney for Defendants
CHAMBERLAIN, D'AMANDA
OPPENHEIMER & GREENFIELD, LLP
Two State Street, Suite 1600
Rochester, NY 14614
Tel.:  585-232-3730
rgm@cdlawyers.com.

</div>

TO:   Christina Agola, Esq.
      Attorneys for Plaintiff
      Christina Agola, PLLC
      2100 First Federal Plaza
      Rochester, New York 14614
      Tel. (585) 262-3320