```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
MELISSA GENERAL,

                    Plaintiff,           07-CV-6159

          v.                             DECISION
                                         and ORDER
CENTER FOR DISABILITY RIGHTS,

                    Defendant.
_____
```

## INTRODUCTION

Plaintiff, Melissa General ("Plaintiff"), brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, alleging sexual discrimination. Specifically, Plaintiff alleges that she was subjected to a hostile work environment during her employment by Defendant, the Center for Disability Rights ("Defendant" or "CDR").

Defendant now moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Rule 56") arguing that the Plaintiff has not produced sufficient evidence to support her discrimination claim.  Plaintiff opposes Defendant's motion and argues that there are genuine issues of material fact.  For the reasons set forth below this Court grants Defendant's Motion for Summary Judgment. Accordingly, Plaintiff's Complaint is hereby dismissed with prejudice.

**BACKGROUND**[1]

CDR is a New York, not-for-profit corporation that provides various services to disabled individuals. CDR has contracted with the Monroe County Department of Social Services to assist individuals with disabilities through the Consumer Directed Personal Assistance Service Program ("CDPAS"). Through this program, qualified disabled persons are able to receive home care services and oversee their own care.

As part of this program, the disabled person, known as a "consumer," may select an in-home attendant. The consumer makes nearly all of the employment decisions with respect to the attendant, including, *inter alia*, recruiting, hiring, training, scheduling, supervising, and firing; while CDR acts as an official "employer of record" for tax, insurance and worker's compensation purposes. The attendant may leave a particular consumer at any time. If an attendant leaves a consumer, the attendant will be

---

[1] This Court notes that Plaintiff has submitted her "Responses to Defendant's Local Rule 56.1 Statement" and an additional "Local Rule 56.1 Counter Statement." As this Court has instructed Plaintiff's Counsel on the purpose and requirements of Local Rule 56.1 on numerous occasions, this Court will not consider Plaintiff's "Local Rule 56.1 Counter Statement" which does not comport to this rule. Further, this Court notes that Plaintiff's "Responses to Defendant's Local Rule 56.1 Statement" often states facts that are either not material or not contested. See Ikejiaku v. Rochester City School Dist., 2011 WL 1099131 (W.D.N.Y. 2001); Ikewood v. Xerox, 2011 WL 147896 (W.D.N.Y. 2011); Duckett v. Wal-Mart Stores, Inc., 2009 WL 995614 (W.D.N.Y. 2009); Szarzynski v. Roche Labaratories, Inc., 2010 WL 811445 (W.D.N.Y. 2010); Barkley v. Pennyan School Dist., 2009 WL 2762272 (W.D.N.Y. 2009); Kuchar v. Kenmore Mercy Hosp., 2000 WL 210199 (W.D.N.Y. 2000); see also Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 74 (2d Cir. 2001) (discussing Local Rule 56.1 in the Southern and Eastern Districts of New York which is essentially the same as this District).

placed on a list of available attendants, which is maintained by CDR. The attendant's list is often used by consumers and SDO's to select an attendant.

The consumer also selects a "self-directed other" ("SDO"), at their sole discretion, to oversee the consumer's care in the event that they are incapable. The relationship between the consumer and the SDO is not governed by CDR (although CDR requires that a consumer select an SDO) or the CDPAS program, rather the SDO serves as a personal representative for the consumer, and the consumer has the power to select and remove the SDO at will.

During the relevant time period, Plaintiff was an attendant for CDPAS consumer, Virginia Keuntz ("Keuntz").  Keuntz and her SDO, Raymond Oliver Taylor ("Taylor"), hired the Plaintiff in late 2003.  While Plaintiff worked for Keuntz, Taylor, who lived with Keuntz, made sexually explicit comments to Plaintiff on approximately six or seven occasions.  Further, Plaintiff states that Keuntz and a friend of Keuntz, David Raufeisen, informed the Plaintiff that Taylor made sexually explicit comments about her on other occasions.

Plaintiff states that she called CDR regarding Taylor's behavior once prior to September 2004.  She did not speak with anyone, but she claims that she left a message, although she does not state with whom she left the message.  CDR claims that it did not receive the message, and, for this reason, it did not follow up

with the Plaintiff regarding her alleged complaint. In her deposition, Plaintiff testified that she did not follow up with the complaint because Taylor later apologized to her. She further testified that she did not attempt to find work with another consumer at the time because, she stated, "Why? I had a great job. I loved my job. Why would I do that?"

On September 26, 2004, an altercation between Keuntz and Taylor occurred at Keuntz's home during Plaintiff's shift. The police were called to the residence, and Plaintiff gave a statement to the police about the altercation. Later that day, Plaintiff was terminated from her position as an attendant for Keuntz by Taylor.

Plaintiff then called CDR and left a message for Mary Willoughby, the Human Resource Director at CDR. Plaintiff also sent an email to Willoughby on September 28, 2004, detailing the verbal abuse by Taylor towards Keuntz, and complaining of the sexually explicit comments he had made to her and about her. CDR asserts that the only complaint that it received from the Plaintiff was the September 28 email. CDR claims that they did not receive either of the two phone calls that Plaintiff allegedly made to CDR regarding Taylor's behavior.

Following the incident, and their receipt of Plaintiff's e-mail, CDR launched an investigation into the incident and attempted to persuade Keuntz to remove Taylor as her SDO. Keuntz, however, refused to do so. CDR informed Plaintiff that they would not

return her to work for Keuntz and they immediately placed Plaintiff on the available attendant's list. In early October, Plaintiff began to work for another consumer, Shelly Perrin, however, the hours required were less than those required for Keuntz. Plaintiff, therefore, remained on the available attendant's list because she was no longer working full-time.

CDR contacted Plaintiff for at least seven possible attendant positions, but Plaintiff either did not return CDR's calls, refused to attend the interviews, or missed the interviews entirely. Plaintiff claims that she refused to work for several of these potential consumers because they were male, however, some of the potential consumers were female.

Later, in February 2005, Plaintiff was hired to work additional hours for another consumer, Christine Wilson, and in August 2005 she also began to work for Joe and Debbie Bonomo and Marjorie Walsh. Plaintiff worked for Joe and Debbie Bonomo and Marjorie Walsh until she left her positions in late 2006 to move to Turkey.

### **DISCUSSION**

Pursuant to Rule 56, a court may grant a motion for summary judgment if the moving party demonstrates "that there is no genuine issue as to any material fact." See Fed.R.Civ.P. 56(c). Once the movant has met this burden, the burden shifts to the nonmovant who must "come forward with evidence to allow a reasonable jury to find

in his favor" on each of the elements of his prima facie case. See Lizardo v. Denny's, Inc., 270 F.3d 94, 101 (2d Cir.2001); Celotex Corp. v. Catrett, 477 U.S. 317, 325-27 (1986). The court must draw all factual inferences, and view the factual assertions in materials such as affidavits, exhibits, and depositions in the light most favorable to the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Celotex Corp., 477 U.S. at 322. However, a nonmovant benefits from such factual inferences "only if there is a 'genuine' dispute as to those facts." See Scott v. Harris, 550 U.S. 372, 127 S.Ct. 1769, 1776 (2007).

The law is well established that "conclusory statements, conjecture, or speculation" are insufficient to defeat a motion for summary judgment. See Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996). The nonmovant cannot survive summary judgment simply by proffering "some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), or presenting evidence that "is merely colorable, or is not significantly probative." See Savino v. City of New York, 331 F.3d 63, 71 (2d Cir.2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (citation omitted)). Rather, he must "set out specific facts showing a genuine issue for trial." See Fed.R.Civ.P. 56(e)(2); See also D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir.1998) ("non-moving party may not rely on mere

conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of...events is not wholly fanciful.").

Title VII forbids an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin...." 42 U.S.C. §2000e-2(a). The Supreme Court has determined that Title VII is violated "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult...that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993) (internal quotation marks and citations omitted); see also Mack v. Otis Elevator Co., 326 F.3d 116, 123 (2d. Cir. 2003). A plaintiff alleging that his employer violated Title VII by creating such a hostile work environment must show "[1] that the harassment was sufficiently sever or pervasive to alter the conditions of [his] employment and create an abusive working environment, and [2] that a specific basis exists for imputing the objectionable conduct to the employer." Alfano v. Costello, 294 F.3d 365, 373 (2d Cir. 2002); see also Quinn v. Green Tree Credit Corp., 159 F.3d 759, 766-7 (2d Cir. 1998) (holding that an employer can be held liable for the conduct of a co-worker or non-employee if there was no

reasonable avenue for complaint or the employer knew of the conduct and did nothing about it).

The test to determine whether plaintiff was the victim of a hostile work environment "has objective and subjective elements: the misconduct shown must be 'severe or pervasive enough to create an objectively hostile or abusive work environment,' and the victim must also subjectively perceive that environment to be abusive." Alfano, 294 F.3d at 374 (quoting Harris, 510 U.S. at 21). The incidents of which a plaintiff complains "must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." Carrero v. New York City Housing Auth., 890 F.2d 569, 578 (2d Cir. 1989). The Court must look at the totality of the circumstances, including the frequency and severity of the discriminatory conduct, whether such conduct is physically threatening or humiliating, and whether such conduct unreasonably interferes with the plaintiff's work performance. See Harris 510 U.S. at 23.

Here, Plaintiff alleges that she complained to CDR on more than one occasion about Taylor's conduct and that CDR did not respond in a reasonable remedial manner to her complaints. Defendant contends that Plaintiff has not shown that someone at CDR knew of the alleged sexually explicit comments until at least September 26, 2004. Defendant further contends that, as soon as CDR had knowledge of the alleged wrongdoing, CDR responded

reasonably by launching an investigation, removing Plaintiff from the abusive environment and attempting to place her with several new consumers, so that she could work hours comparable to the hours she worked for Keuntz.  Defendant further argues that Plaintiff has not shown that the environment in which she worked was either objectively or subjectively hostile. Taking into consideration the totality of the circumstances, this Court finds that there is no genuine issue of material fact with respect to Plaintiff's claim for discrimination.

Initially, this Court notes that, even considering the facts in the light most favorable to the Plaintiff, Plaintiff has not established that she subjectively perceived the working environment to be hostile.  Plaintiff testified that she did not follow up with her first complaint and she did not attempt to find a different consumer because Taylor apologized and because, she stated, "Why? I had a great job. I loved my job. Why would I do that?".  While not entirely dispositive of Plaintiff's claim, this testimony does not indicate a working environment that plaintiff subjectively feels is "permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993).

This Court also finds that Plaintiff has not shown that CDR knew of the situation and failed to reasonably respond. To establish a claim for a hostile work environment based on the conduct of a non-employee, Plaintiff must establish that <u>someone</u> at CDR knew of the situation, and that CDR failed to take reasonable remedial action in response. See <u>Duch v. Jakubek</u>, 588 F.3d 757, 763 (2d Cir. 2009); <u>see also</u> <u>Torres v. Pisano</u>, 116 F3d 625, 634 (2d Cir. 1997).  Based on the record, it appears that Plaintiff attempted to call CDR prior to September 2004, but she did not speak with anyone.  She states that she left a message, but she does not state with whom she left the message or what was the contents of the message.  Because the record does not indicate that <u>someone</u> at CDR knew of the alleged harassment prior to September 2004, or that this knowledge could be imputed to CDR, this Court does not find that a reasonable jury could conclude that CDR had knowledge of harassment and failed to reasonably respond prior to September 2004.  See <u>Duch</u> 588 F.3d at 763.

Lastly, this Court does not find that the Plaintiff has shown that the remedial actions taken by CDR following the September 2004 incident were unreasonable under the circumstances. The reasonableness of the employer's response is determined by examining the particular facts of the case including, *inter alia*, the "gravity of the harm, the nature of the work environment and the resources available to the employer." See <u>Snell v. Suffolk</u>

County, 782 F.2d 1094 (2d Cir. 1986). In this case, the record reveals that Plaintiff was removed from her position with Keuntz, and she was not obligated to return following the September 26, 2004 incident. CDR did not have the ability to remove Plaintiff, as this is in the sole discretion of the consumer and the SDO, but they informed Plaintiff that they would not attempt to return her to the allegedly abusive environment and that they would attempt to find her another consumer. Additionally, when CDR became aware of the Plaintiff's situation, they investigated the complaint and attempted to convince Keuntz to select a new SDO. However, the hiring and firing of the SDO is also within the sole discretion of the consumer. Accordingly, this Court finds that CDR took all reasonable steps to ensure that the Plaintiff was no longer subject to the allegedly hostile environment.

With respect to Plaintiff's continued employment with other consumers in the CDPAS program, the record reveals that CDR attempted to place the Plaintiff with several (not less than seven) other consumers. However, Plaintiff was unwilling to attend the interviews set up by CDR. Accordingly, as CDR is not in control of the hours required for each individual consumer or their selection of an attendant, Plaintiff's weekly hours were limited by the hours needed by the consumers with whom she chose to interview and who ultimately selected her as their attendant. Plaintiff contends that she was unwilling to work for male consumers, and this was the

reason she refused to attend the interviews. However, the record indicates that not all of the available consumers were male and that Plaintiff later worked for a male consumer, Joe Bonomo. Accordingly, this Court finds that CDR acted reasonably, with the resources that were available to it, to place the Plaintiff with a consumer following the September 2004 incident.

Plaintiff also argues that CDR failed to reasonably respond to the situation (by finding her a new consumer) until she filed her complaint with the EEOC. However, the record reveals that Plaintiff was placed with her first consumer in early October, prior to filing her EEOC Charge. Further, CDR immediately placed Plaintiff on the available attendants list and did not remove her from the list, even while she was working part-time in October, because she was not working the same number of hours she had previously worked. CDR also attempted to find other consumers with whom the Plaintiff could make up the hours she had lost, however, Plaintiff did not wish to attend the interviews because the potential consumers were male. This Court does not find that there is evidence to support Plaintiff's argument that CDR's response was in any way connected to her filing a complaint with the EEOC, as CDR had already begun to respond to the situation by attempting to find Plaintiff a new placement and placing her on the available attendant's list.

Therefore, because the record reveals that CDR took reasonable remedial actions when they became aware of the allegedly abusive environment, this Court finds that Plaintiff has established that there is a material issue of fact with respect to her claim for a hostile work environment.

## **CONCLUSION**

For the reasons set forth above, Plaintiff has not established that the she subjectively perceived her working environment to be hostile or that there is a legal basis to impute Taylor's conduct to CDR. Therefore, this Court finds that Plaintiff has not established a claim for a hostile work environment under Title VII. Accordingly, this Court grants Defendant's Motion for Summary Judgement and Plaintiff's Complaint is hereby dismissed with prejudice.

ALL OF THE ABOVE IS SO ORDERED.

                                                      s/ Michael A. Telesca
                                                         MICHAEL A. TELESCA
                                        United States District Judge

Dated:    Rochester, New York
          April 8, 2011